UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHARLES BARRON, MELINDA PERKINS,
TERRY NORFLEET, ROSCOE GREGORY,
and ANITA FISCHER,

                             Plaintiffs,

          -against-

NEW YORK CITY BOARD OF ELECTIONS,

                            Defendant.
------------------------------------------------------X

**MEMORANDUM & ORDER**

08 CV 3839 (RJD) (RER)

Before RAGGI, Circuit Judge, and BLOCK and DEARIE, District Judges.

DEARIE, Chief Judge.

      Plaintiffs seek preliminary and permanent injunctive relief compelling defendant to place Inez D. Barron on the November 4, 2008, general election ballot as a candidate for the office of Member of Assembly from the 40th Assembly District, to fill the two-month vacancy in the term of office expiring on December 31, 2008. Plaintiffs allege that defendant's failure to do so violates Sections 2 and 5 of the Voting Rights Act of 1965, as well as several other statutory and constitutional provisions. A three-judge panel of the Court heard oral argument on plaintiffs' Section 5 claim on October 8, 2008. For the following reasons, plaintiffs' request for preliminary and permanent injunctive relief based on their Section 5 claim is denied.[1]

---

[1]This order denies the relief plaintiffs seek solely on Section 5 grounds. Plaintiffs' remaining arguments are not before this panel, and will be subsequently addressed by Judge Dearie alone.

## BACKGROUND

On April 16, 2008, the New York Board of Elections certified a vacancy in the office of Member of Assembly for the 40th Assembly District after Assemblywoman Diane Gordon's convictions for multiple felonies. The seat remains vacant, and the current term expires on December 31, 2008.

On June 16, 2008, Inez D. Barron and two other individuals sought an order from New York Supreme Court to compel the Board of Elections to hold a primary and an election to fill the vacancy until its expiration on December 31, 2008. The Supreme Court ordered the relief Ms. Barron sought, and the Appellate Division, Second Department, affirmed. Matter of Barron v. Bd. of Elections in the City of N.Y., 860 N.Y.S.2d 633 (App. Div. 2008). Although New York Public Officers Law section 42(4) specifically states that a special election for the office of member of the assembly or state senator "shall not be held . . . unless the vacancy occurs before the first day of April," N.Y. Pub. Off. § 42(4), the Second Department held that elections for both the full and vacancy terms must be placed on the general election ballot if the vacancy occurs before September 20 of any year, pursuant to the more general vacancy provisions in Section 42(1), id. at 636.

The New York Court of Appeals reversed the decision of the Appellate Division on September 4, 2008, holding that New York election law does not contemplate simultaneous elections for the expiring and full terms of a single Assembly seat on the same general election ballot. Matter of Barron v. Bd. of Elections in the City of N.Y., 2008 N.Y. LEXIS 2241, at *3-4 (Sept. 4, 2008). The Court noted that its holding was fully consistent with the legislative history and intent; moreover, it represented the only logical result: "Indeed, it would be anomalous to

require the Board of Elections to assume the burden and expense of simultaneously conducting a regular general election for the term commencing January first and a separate general election to fill the vacancy for the last two months of the year (particularly when the statute potentially leaves the office vacant for a period of up to seven months)." Id. at 4-5.

Ms. Barron successfully ran in the Democratic primary last month for the full term Assembly seat not at issue here, becoming a candidate on the November 4th ballot for that seat, which commences on January 1, 2009. It is generally recognized that she will most likely succeed to that office on that date.

Plaintiffs, who are five African-American voters residing within the 40th Assembly District, filed a complaint raising their Voting Rights Act and other claims on Friday, September 19, 2008, and on Monday, September 22, plaintiffs filed their motion for injunctive relief, which also included a request for a temporary restraining order. The Court met with the parties the same day and ordered an expedited briefing schedule. The Court received defendant's response on the morning of September 25, and plaintiffs' reply later the same day. A subsequent telephone conference with the parties took place on Monday, September 29. On October 1, the Court denied the temporary restraining order.[2]

While a single judge is empowered to decide an application for a temporary restraining order in a Section 5 case, Puerto Rican Leg. Def. & Educ. Fund, Inc. v. City of New York, 769 F.Supp. 74, 75-76 (E.D.N.Y. 1991), any action brought under that section "shall be heard and

---

[2]On October 6, plaintiffs filed an amended complaint asserting three additional constitutional claims. As with the remaining original claims, Judge Dearie will address these claims sitting in his capacity as the assigned judge.

determined by a court of three judges in accordance with the provisions of section 2284 of Title 28," 42 U.S.C. § 1973c. Accordingly, the Chief Judge of the Circuit designated this three-judge panel to hear the merits of plaintiffs' Section 5 claim, and to rule on their motion for preliminary injunctive relief.

The three-judge panel heard oral argument on October 8, 2008. For the following reasons, plaintiffs' request for injunctive relief pursuant to Section 5 of the Voting Rights Act is denied.

## DISCUSSION

Section 5 of the Voting Rights Act requires any State or political subdivision covered under the Act that is seeking to enact or administer "any standard, practice, or procedure with respect to voting different from that in force or effect" to first obtain a declaratory judgment from the United States District Court for the District of Columbia approving the change, or preclearance from the United States Attorney General. 42 U.S.C. § 1973c. Absent such preclearance, "[n]o new voting practice or procedure may be enforced." United States v. Bd. of Supervisors of Warren Co., Miss., et al., 429 U.S. 642, 645 (1977).

The role of a three-judge court in a Section 5 action is limited, and the panel "may determine only whether § 5 covers a contested change, whether § 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." Lopez v. Monterey County, 519 U.S. 9, 23-24 (1996). In a Section 5 case in which "voting changes subject to § 5 have not been precleared, plaintiffs are entitled to an injunction prohibiting the State from implementing the changes." Clark v. Roemer, 500 U.S. 646, 652-653

4

(1991); see also Lopez, 519 U.S. at 20 (1991). When plaintiffs seek an injunction in the context of a Section 5 claim, the traditional standards for injunctive relief do not apply. Puerto Rican Leg. Def. & Educ. Fund, 769 F.Supp. at 78.

Section 5 is "aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race," NAACP v. Hampton County Elec. Comm., 470 U.S. 166, 175 (1985), quoting Allen v. State Board of Elections, 393 U.S. 544, 565 (1969) (internal quotation marks omitted), and is thus to be given "broad scope," NAACP, 470 U.S. at 176. The type of electoral change plaintiffs allege solidly falls within the ambit of voting practices contemplated by the Act. Defendant does not dispute Section 5's applicability to the type of change plaintiffs allege.

Accordingly, the only issue that remains for the Court to decide is whether the Board of Elections' refusal to place Ms. Barron on the ballot for the remainder of the current Assembly term expiring on December 31, 2008, represents a "change" for purposes of Section 5. We conclude that it does not.

As the Supreme Court has recently observed, "[i]n order to determine whether an election practice constitutes a 'change' as that term is defined in our § 5 precedents, we compare the practice with the covered jurisdiction's 'baseline.'" Riley v. Kennedy, 128 S.Ct. 1970, 1982 (2008). Plaintiffs urge the Court to use November 7, 2000, as the baseline. On that date, voters in the 45th Assembly District elected Steven Cymbrowitz to serve as a New York State Assemblyman, both for a full term beginning in January 2001, as well as the remainder of the term left vacant after the passing of his wife, Assemblywoman Lena Cymbrowitz, in August 2000. Plaintiffs also argue that the procedure followed in the 2000 election was consistent with

the prevailing interpretation of Section 42 of the Public Officers Law, as evidenced by the cases relied upon by the Second Department in Matter of Baron, 860 N.Y.S.2d at 636 (citing, inter alia, Matter of Engel v. Bd. of Elections of the State of New York, 535 N.Y.S.2d 118 (App. Div. 1988); In re Wilkins, 143 N.Y.S. 758 (App. Div. 1913)). Plaintiffs further allege that if November 7, 2000, becomes the baseline, the Board of Elections' refusal to place Ms. Barron on the general election ballot for the two-month vacancy term constitutes a change requiring preclearance. Because this alleged change has not been precleared, plaintiffs further argue, defendant must place Ms. Barron on the upcoming general election ballot for the remainder of the vacant term expiring at the end of this year.

The Supreme Court has defined the Section 5 baseline as "the most recent practice that was both precleared and in 'force and effect'—or, absent any change since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date." Id. Plaintiffs concede that the November 7, 2000, election of Steven Cymbrowitz to the remainder of his wife's term was not precleared by the Department of Justice or United States District Court for the District of Columbia. Therefore, under the standard articulated in Riley, we hold that November 7, 2000, does not qualify as a baseline for the limited purposes of Section 5 analysis. Rather, the baseline remains the date that Kings County became subject to the Act.[3]

Based on the factually wanting submissions of both parties, it appears that the

---

[3] Kings County has two applicable coverage dates – November 1, 1968, and November 1, 1972. U.S. Department of Justice, Civil Rights Division, Voting Section, "Section 5 Covered Jurisdictions," available at http://www.usdoj.gov/crt/voting/sec_5/covered.htm. The exact date used is immaterial for present purposes, as the practice appears not to have changed during that time period.

6

overwhelming majority of New York State legislative vacancies occurring during and prior to the baseline period under similar circumstances—i.e., when the vacancy arises after April 1 in an even-numbered year—were filled at the general election only for the upcoming full term. Therefore, we find that the baseline practice of the Board of Elections for purposes of Section 5 is to place only one election, for the full term commencing the following January, on the general election ballot in an even-numbered year for a seat vacated after April 1 of that same year.

Assuming, *arguendo*, that the Court were to determine that the November 7, 2000, election represented a change in practice, it would be unlikely that this practice was actually "in force or effect," as the Supreme Court requires for the determination of the baseline. Riley, 128 S.Ct. at 1982. Based on the meager evidence presented, the conduct of that election appears anomalous when compared with prior situations in which vacancies occurred in the final year of an Assembly term. We are dismayed that the Board of Elections has been unable to provide any factual amplification of the events surrounding the 2000 election and the decision to hold two separate elections on that general election ballot. Moreover, the Board of Elections has failed to provide an exhaustive list of recent elections following vacancies to assist the Court in determining the prevailing practice, both before and since the 2000 election. Nevertheless, in light of the overwhelming weight of the data the Court does possess, it appears likely that the 2000 election may have been a "temporary misapplication of state law" that was never "in force or effect." Young v. Fordice, 520 U.S. 271, 282 (1997); Riley, 128 S.Ct. at 1984.

To the extent plaintiffs contend that the New York Court of Appeals decision in Matter of Barron is also a "change" requiring preclearance, we reject that argument on similar grounds. We recognize that Section 5's "preclearance requirement encompasses 'voting changes mandated

7

by order of a state court.'" Id. at 1982 (citing Branch v. Smith, 538 U.S. 254, 262 (2003)). Plaintiffs have not, however, persuaded us that the Court of Appeals decision effects such a change. Even if earlier intermediate state court decisions could be construed to reflect an understanding of New York law on vacancy elections supportive of plaintiffs' position, Riley and the cases upon which it relies make clear that the relevant baseline for Section 5 purposes is "'the procedure in fact 'in force or effect'"' on the coverage date, and not any law (or interpretation of law) not so in force. Id. at 1983 (citing Perkins v. Matthews, 400 U.S. 379, 395 (1971) (holding that state law calling for at-large election of aldermen was not relevant baseline because elections were in fact held by ward) (emphasis in Riley)). Here we have found that the practice actually in use on Kings County's coverage date was not consistent with the lower court cases cited by plaintiffs. Rather, that practice was consistent with the defendant's conduct in this case and with the New York Court of Appeals decision in Matter of Barron.

Even if we were to deem the 2000 election a "change" in practice, plaintiffs would still be essentially asking the Court to enforce a change that has not been precleared. The Supreme Court has repeatedly declared that such uncleared changes shall not be enforceable as law. See, e.g., Lopez, 519 U.S. at 20 ("No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance."); Clark, 500 U.S. at 652; Hathorn v. Lovorn, 457 U.S. 255, 270 (1982); Bd. of Supervisors of Warren Co., 429 U.S. at 645.

Based on the uncontested evidence before the Court, the decision by defendants to place Ms. Barron on the ballot solely for the full term beginning in January 2009 appears consistent with the practice and procedures existing during the baseline period. The defendant's current

practice therefore does not represent a change for purposes of Section 5, and preclearance is not required.

Accordingly, plaintiffs' request for injunctive relief is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 3, 2008

                                                         s/ Judge Raymond J. Dearie
                                                         RAYMOND J. DEARIE
                                                         United States District Judge for the Court